**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STACEY LAMONT MOSLEY,** | : | **No. 3:14cv468** |
| **Petitioner** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | **(Magistrate Judge Saporito)** |
| **LOUIS S. FOLINO,** | : | |
| **Respondent** | : | |

## MEMORANDUM

Before the court for disposition is Magistrate Judge Joseph M. Saporito Jr.'s report and recommendation (hereinafter "the R&R" or "R&R"). (Doc. 31). The R&R proposes: 1) dismissing with prejudice Mosley's petition for a writ of habeas corpus under 28 U.S.C. § 2254; and 2) declining certificate of appealability issuance as petitioner has failed to demonstrate a substantial showing of the denial of a constitutional right.[1] Petitioner timely filed objections to the R&R on March 8, 2018. (Doc. 34). Respondent, Louis S. Folino, has not filed a response to the objections and the time for such filing has passed. Thus, the matter is ripe for disposition.

---

[1]Petitioner filed *pro se*.

**Background**[2]

On April 16, 2009, a jury in the Court of Common Pleas for Juniata County, Pennsylvania (hereinafter "the Common Pleas Court") convicted petitioner of robbery, criminal conspiracy, and criminal attempt. The convictions resulted from Mosley's actions on June 6, 2008, when he attempted to enter the Juniata Valley Bank (bank employees denied him access because they were suspicious of his intentions). Not long after his attempt to enter the bank, Mosley entered Rosewood Market, a convenience store. He handed the cashier a note indicating he had a gun and demanding all the money in the cash register. He left the market with more than four hundred (400) dollars. (Doc. 17-3 at 1, 2).

The police questioned Mosley's then-girlfriend, Diane Harry, on June 9, 2008. She identified Mosley as the perpetrator and admitted she drove the get-away car. Mosley was arrested on June 10, 2008 and charged as noted above. On July 1, 2008, Mosley filed a motion for a lineup to force an eyewitness to identify him. The trial court denied his motion on August 6, 2008. A preliminary hearing held on August 13, 2008 resulted in Mosley

---

[2] Neither party objects to the factual background or procedural history as set forth in the R&R. Thus, as the parties agree on these matters, we provide limited citations to the record for this brief background section.

being bound over for trial on all counts charged.  A jury found him guilty of all charges on April 16, 2009.  (Doc. 17-3 at 2).

On July 10, 2009, the trial judge sentenced petitioner to serve an aggregate term of thirty-five (35) to seventy (70) years imprisonment as a third strike offender under Pennsylvania law.  42 PA. CONS. STAT. ANN. § 9714(a) On direct appeal, the Superior Court of Pennsylvania (hereinafter "the Superior Court") affirmed his conviction and sentence on October 6, 2010. See (Doc. 17-3).  Mosley did not file a petition for *allocatur* to the Pennsylvania Supreme Court.

On March 4, 2011, Mosley filed a *pro se* petition, pursuant to Pennsylvania's Post Conviction Relief Act (hereinafter "PCRA"), in the Common Pleas Court, which denied the petition on March 5, 2012.  Mosley appealed to the Pennsylvania Superior Court.  The Superior Court dismissed the appeal on December 11, 2012, and denied a request for rehearing on January 13, 2013.  Mosley next petitioned the Pennsylvania Supreme Court for *allocatur*, which that court denied on June 25, 2013.

Subsequent to exhausting his state court appeals, Mosley filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (hereinafter "section 2254") with this court on November 7, 2013.  (See M.D. Pa. No. 3:13-cv-2733, Doc. 1).  The Clerk of Court assigned the case to Magistrate Judge

3

Susan E. Schwab.  On November 26, 2013, Magistrate Judge Schwab issued a <u>Mason v. Meyers</u> order.[3]  (<u>Id.</u>, Doc. 5).  The order advised Mosley, *inter alia*, that to avoid successive section 2254 petitions, he must marshal in one section 2254 petition all arguments collaterally attacking his conviction.  (<u>Id.</u>)  To this end, the order included a "notice of election" form, and directed Mosley to return the form within thirty (30) days.[4]

On December 23, 2013, Mosley elected to withdraw his prior 2254 petition.  (<u>Id.</u>).  Accordingly, on January 23, 2014, the court deemed Mosley's petition withdrawn and closed that case.  (<u>Id.</u>, Doc. 8).

On March 7, 2014, Mosley filed the instant *pro se* section 2254 petition.  (Doc. 1).  The parties briefed their respective positions and on May 12, 2016, Magistrate Judge Saporito issued his R&R, in which he recommended dismissing the habeas corpus petition as untimely.  Mosley filed objections to the R&R on May 26, 2016.  (Doc. 26).  We sustained the objections, declined to adopt the R&R, and remanded the case for further proceedings consistent with our memorandum and order.  (Docs. 28, 29).  Magistrate Judge Saporito

---

[3]  <u>Mason v. Meyers</u>, 208 F.3d 414 (3d Cir. 2000).

[4]  The notice of election form required Mosley to indicate whether he wished the court to rule on his section 2254 petition as-is or to elect to withdraw his petition and file a subsequent all-inclusive petition.  (No. 3:13-cv-2733, Doc. 5).

issued the instant R&R on February 5, 2018.  (Doc. 31).  Petitioner timely filed objections to the R&R on March 8, 2018, thus bringing the case to its current posture.[5]

## Jurisdiction

Section 2254 confers jurisdiction on United States district courts to issue a "writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

## Standard of review

In disposing of objections to a magistrate judge's R&R, the district court issues a *de novo* determination of those portions of the report against which objections are made.  28 U.S.C. § 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983).  The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.  Id.

---

[5]Respondent, Louis S. Folino, did not respond to the objections.

Federal law provides that a district court is authorized to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254.  A petition for a writ of habeas corpus is the exclusive federal remedy for a state prisoner challenging the "very fact or duration" of his confinement and seeking "immediate release or a speedier release from that imprisonment."  Preiser v. Rodriguez, 411 U.S. 475, 498-500 (1973).

Under the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), a federal court cannot grant habeas relief on a claim that has been adjudicated by a state court unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

28 U.S.C. § 2254(d)(1)-(2).

**Discussion**

Magistrate Judge Saporito recommends denying and dismissing with

prejudice the instant section 2254 habeas petition, and further declining to issue a certificate of appealability ". . . as petitioner has failed to demonstrate a substantial showing of the denial of a constitutional right."  (R&R at 53) (citing 28 U.S.C. § 2253(c)(2); see also Buck v. Davis, 137 S. Ct. 759, 773 (2017); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

We agree that petitioner has not demonstrated the denial of any constitutional right.  Accordingly, we will adopt the magistrate judge's report and recommendation.  Our reasoning follows.

**(A) Habeas claims raised and denied on direct appeal to the Pennsylvania Superior Court**

Magistrate Judge Saporito enumerated fourteen (14) claims set forth by petitioner as grounds for relief under section 2254.  (R&R at 5-8).  Petitioner, however, raised only claims one (1) through six (6) in his direct appeal of his sentence to Superior Court, which denied his claims on the merits.  As noted above, Mosley did not file a petition for allowance of appeal of his sentence to the Pennsylvania Supreme Court.[6]

---

[6]Mosley petitioned the Pennsylvania Supreme Court for allowance to appeal the denial of his PCRA petition in state court, which the Pennsylvania Supreme Court denied on June 25, 2013.

Magistrate Judge Saporito painstakingly scrutinized petitioner's claims one (1) through six (6), and found that nothing in the record of petitioner's case runs afoul of section 2254(d)(1) or (2). (R&R at 35-52). We will examine petitioner's claims one (1) through six (6) individually, together with the R&R and Superior Court's memorandum denying these claims on the merits. (Doc. 17-3).

### I. Claims 1 through 6

The R&R discerns that Mosley seeks federal habeas relief based upon the following grounds:

### Claim 1

First petitioner claims that the trial court erred in denying his pre-trial motion for eyewitnesses to identify him through either a lineup or photo array, and then erred again by denying his motion to suppress eyewitness identification testimony "without just cause." (Doc. 17-3 at 3 ¶ A.). Put another way, Mosley argued before the Superior Court that "the eyewitness identification testimony should have been suppressed because the trial court, 'without just cause,' denied his motion for a lineup or a photo array."

### Pre-trial motion for lineup or photo array

Petitioner Mosley's argument in the Superior Court is that the lack of a lineup or photo array resulted in courtroom identifications that were

unnecessarily suggestive and increased the likelihood of misidentification. (Doc. 17-3 at 5). Three witnesses identified Petitioner Mosley in court: (a) his co-defendant and former girlfriend Diane Harry, (b) Diane Hornberger, a 34-year bank employee,[7] and (c) Rosemary Womer, a market owner. (Doc. 17-3 at 8, 9).

We agree with the magistrate judge that a defendant in a criminal case has no constitutional right to a lineup. U.S. v. Estremera, 531 F.2d 1103, 1111 (2d Cir. 1976), (citing U.S. v. Boston, 508 F.2d 1171, 1176-77 (2d Cir. 1974), cert. denied, 421 U.S. 1001 (1975)); U.S. v. Ravich, 421 F.2d 1196, 1203 (2d Cir.), cert. denied, 400 U.S. 834 (1970); U.S. v. McGhee, 488 F.2d 781, 786 (5th Cir.), cert. denied sub nom; Bunner v. U.S., 417 U.S. 949 (1974); U.S. v. Hurt, 476 F.2d 1164, 1168 (1973); U.S. v. Hall, 437 F.2d 248, 249 (3d Cir.), cert. denied sub nom; Knight v. United States, 402 U.S. 976 (1971).

A defendant may move for a lineup in trial court or during pre-trail proceedings. "[A] court-ordered lineup may be granted by the trial judge in the exercise of his discretion if the request is made promptly after crime or arrest and if such lineup may be of value to both sides. Whether [the trial

---

[7]Hornberger also identified defendant at a pre-trial hearing. (Doc.17-3 at 8)).

court judge] abused his discretion requires us to consider *all relevant circumstances*, including the adequacy and propriety of other identifications, the amount of time that had elapsed since the crime had occurred and the extent of change in the accused's appearance." Estremera, 531 at 1110 (emphasis supplied).

We now turn to the facts in this case and the analysis performed by the Superior Court compared with the Estremera analysis.

Because a defendant lacks the right to a lineup, under Pennsylvania law "the grant or denial of a request for a lineup is within the trial court's discretion and the decision will not be disturbed absent an abuse of discretion. Commonwealth v. Brown, 676 A.2d 1178, 1182 (Pa. 1996). The Superior Court found it was within the trial court's discretion to deny Petitioner Mosley's motion for a lineup. (Doc. 17-3 at 5). In reaching that conclusion, the appellate court deferred to the trial court's conclusion that "the identification testimony was not only reliable, but supported by an independent basis." (Id. at 7-8). Actually, the trial court set forth two independent basis of identification.

First, Petitioner Mosley was identified by the market owner, Rosemary Womer, and a bank employee of 34 years, Diane Hornberger. Both testified that they observed Petitioner Mosley's criminal behavior and suspicious

conduct on June 6, 2008.  Based on this testimony alone, the Superior Court noted that "the most important factor in *the totality of the circumstances test* is the opportunity of the [identifying] witness to view the suspect at the time of the crime."  (Id. at 7-8) (emphasis supplied).

Second, both witnesses described Petitioner Mosley's appearance at the preliminary hearing while Petitioner Mosley himself waited outside the courtroom.  Both then identified Petitioner Mosley as the perpetrator when he returned to the courtroom.  (Doc. 17-3 at 8).

Thus, we find that Pennsylvania's standard for analyzing abuse of discretion in denying a request for a lineup is substantially the same as the federal standard because the totality of the circumstances is central to both. There is nothing in the record to suggest that denying Petitioner Mosley's motion for a lineup or photo array is a decision that is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

### Denial of motion to suppress in-court identification

Next, in considering petitioner's argument that the trial court erred in denying his motion to suppress in-court identification by the bank employee and market owner, the magistrate judge noted that the Superior Court

analysis flowed from Commonwealth v. Edwards, 762 A.2d 382 (Pa. Super. Ct. 2000), which employed the federal admissibility standard for in-court identification.  See Manson v. Brathwaite, 432 U.S 98 (1977); Neil v. Biggers, 409 U.S. 188 (1972).  In these cases, the Supreme Court concluded "that reliability is the lynchpin in determining the admissibility of identification testimony . . ."  Manson, 432 U.S. at 114; Biggers, 409 U.S. at 199-200.

Factors for the trial court judge to consider include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. The trial judge weighs these factors against the corrupting effect of the suggestive identification.  Id.

The Superior Court considered petitioner's argument here under the state law standard of review for denial of a supression motion set forth in Commonwealth v. Tiffany, 926 A.2d 503, 506 (Pa. Super. Ct. 2007) (citations omitted), appeal denied, 948 A.3d. 804 (Pa. 2008). ("[W]hether the factual findings are supported by the record and whether the legal conclusions drawn from these facts are correct.")

Significantly, the Superior Court considered it's own rulings that "the totality of the circumstances provide a reliable independent basis for

identifying the defendant as the perpetrator of the crime at issue."

Commonwealth v. Edwards, 762 A.2d 382, 391 (Pa. Super. Ct. 2000).

Therefore, the Pennsylvania standard of review of the grant or denial of a

suppression motion, "totality of the circumstances," is also substantially the

same as the federal standard.

     As noted above, the witnesses testified that they had personally

observed Petitioner Mosley on the date in question, "including his criminal

acts, attempted criminal acts, and otherwise suspicious conduct."  (Doc. 17-3

at 9-10).  Thus, the witnesses' opportunity to view the criminal at the time of

the crime is the first reliability-of-identification factor set forth by the Supreme

Court in Neil and Manson.

     Finally, Diane Harry identified defendant, her former boyfriend, with a

similar description, placing him at the crime scenes during the times of the

robbery and attempted robbery.  The Superior Court determined that her

testimony added to eyewitness reliability and supported the identifications

independently.  (Doc.17-3 at 9).  The Magistrate Judge determined that the

Superior Court properly considered and rejected defendant's claim that his in-

court identification was erroneously admitted into evidence as unduly

suggestive.  Superior Court found the identification witnesses' testimony

reliable and independently supported.  (R&R at 38-39).

13

Having reviewed the Superior Court's reasoning, we agree with the Magistrate Judge that there is nothing in the record to suggest that the Superior Court applied <u>Mason</u> and <u>Biggers</u> unreasonably, or engaged in an unreasonable factual determination. Thus, the petition will be denied on the merits regarding claim one (1).

**Claim 2**

Petitioner next claims that the trial court erred in treating his conviction as a "third strike" for sentencing, when his second predicate conviction for a "crime of violence" was not treated as a second strike at the time of that conviction. His position is that the trial court should have treated the conviction at bar as his second strike, rather than his third strike. Put another way, Petitioner Mosley argues that the instant conviction should have been his second predicate, not his third.

Pennsylvania law provides that a person convicted of a crime of violence, and who is then convicted of a second crime of violence, shall be sentenced to a minimum of at least ten (10) years total confinement. If a person is then convicted of a third crime of violence such person shall be sentenced to a minimum of at least twenty-five (25) years total confinement. Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the

public safety, sentence the offender to life imprisonment without parole.  42 PA. CONS. STAT. ANN. § 9714(a).

Federal district courts are bound to accept the state court's conclusions of state law.  See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); see also Floyd v. Grace, Civil Action No. 06-2324, 2010 WL 1490598 at *7 (E.D. Pa. Mar. 9, 2010) (finding a habeas claim challenging the application of section 9714 to be non-cognizable in federal habeas proceedings).

The determination of a "crime of violence" under state law is a matter fo state court determination. A substantial body of jurisprudence underpins the magistrate judge's determination that Petitioner Mosley's section 9714 is non-cognizable in federal habeas proceeding.  We agree with the magistrate judge.  This claim is non-cognizable in federal habeas proceedings under Supreme Court precedent.  The petition will be denied, therefore, regarding claim two (2).

15

**Claim 3**

Petitioner Mosley next claims that the sentence enhancement as a "third strike" conviction violated his jury trial and due process rights because the fact question of his predicate "crime of violence" was determined by the trial judge instead of the jury, allegedly violating the Supreme Court's holding in Apprendi v. New Jersey, 530 U.S. 466 (2000).

We find that Petitioner Mosley has misinterpreted Apprendi. There, the Supreme Court confirmed that, "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490 (emphasis added). Here, the sentencing court considered Petitioner Mosley's prior conviction in determining the sentence enhancement.

Accordingly, the Superior Court considered petitioner's claim and found that the sentence imposed upon him did not run afoul of Apprendi. We agree with the magistrate judge that nothing suggests the Superior Court applied the standard set forth in Apprendi to the facts at bar in an unreasonable manner, nor is there any sign that Superior Court reached an unreasonable factual determination. Thus, the petition will be denied regarding claim three (3).

**Claim 4**

Petitioner next claims that his thirty-five (35) to seventy (70) year sentence is unreasonably excessive. Initially, the Superior Court determined on direct appeal that petitioner presented no substantial question specific to the sentencing code or fundamental norms underlying the sentencing process. (Doc. 17-3 at 20). Such claims, however, are grounded in the Constitution: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. Supreme Court precedent sets forth standards that federal courts consult to estimate whether a sentence is unreasonably excessive.

The Supreme Court held that "[t]he final clause [of the Eighth Amendment] prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." Solem v. Helm, 463 U.S. 277 at 284 (1983). Punishment proportional to the crime is fundamental in western jurisprudence. Id. "[A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Id. at 292. The Solem

Court found life without parole to be unconstitutional when imposed for a defendant's seventh non-violent felony (the crime of passing a worthless check).  Id. at 303.

In Harlemin v. Michigan, 501 U.S. 957 (1991), however, another five-to-four majority concluded that Solem was "simply wrong" and that the Eighth Amendment contains no proportionality guarantee.  Id. at 965.  There, the Court upheld a life without parole sentence for possession of more than 650 grams of cocaine imposed upon an offender who had no prior felony convictions.  Later, the Court acknowledged that it "had not established a clear or consistent path for courts to follow, and the only clearly established law emerging from its jurisprudence in this area, for purposes of federal habeas relief . . .  is that a *gross disproportionality principle* applies to sentences for terms of years under 28 U.S.C.A. § 2254(d)(1).  Lockyer v. Andrade, 538 U.S. 63, 72 (2003) (emphasis added) (further acknowledging a lack of clarity regarding what constitutes gross disproportionality).

In his analysis of the petitioner's fourth claim, whether his sentence is grossly disproportionate to the crime he committed, the Magistrate Judge pointed to two cases in the Supreme Court's line of Eighth Amendment jurisprudence.  He found both cases to be germane to petitioner's habeas claim here.

The first case is <u>Lockyer</u>.  There, a twenty-five (25)-years-to-life sentence was upheld when imposed upon a defendant who stole about $150 worth of videotapes, also after previous convictions for two or more serious or violent felonies. The second case is  <u>Ewing v. California</u>, 538 U.S. 11 (2003). There, the Court upheld a twenty-five (25)-years-to-life sentence imposed upon a defendant for stealing $1,200 worth of golf clubs, after two or more prior convictions of serious or violent felonies.

Thus, we review for gross disproportionality relative to petitioner's fourth claim at bar.  Petitioner Mosley was sentenced to thirty-five (35)-to-seventy (70) years for stealing $493 and attempted bank robbery, after two or more previous crime-of-violence convictions.  Considered in light of <u>Solem</u>, <u>Harmelin</u>, <u>Ewing</u> and <u>Andrade</u>, we find the Magistrate Judge correctly determined that nothing suggests the Superior Court's decision was unreasonably applied to the instant facts, nor does anything to suggest that the Superior Court unreasonably determined the facts in this case.

In addition, the magistrate judge correctly found this question of state law is not cognizable in a federal habeas proceedings under <u>Estelle</u>. Thus the petition will be denied both on the merits and as a matter of law regarding claim four (4).

**Claim 5**

Next, petitioner claims that the trial court erred in denying his pre-trial motion for a mistrial because a witness described him as wearing "jailbird pants." Prosecution witness Angie Maneval testified at trial that when she saw Petitioner Mosley enter the bank where she worked, he wore what she described as "jailbird pants." Defense counsel moved for a mistrial, arguing that Maneval's remark was "unduly inflammatory, suggestive and prejudicial. The trial court denied the motion. (Doc. 17-3 at 20).

Maneval's "jailbird pants" description initially sounds improper. A trial court, though, need not grant a motion for mistrial unless "the alleged prejudicial event may reasonably be said to deprive the defendant of a fair an impartial trial." Com. v. Jones, 668 A.2d 491, 503 (1995), (citing Commw. v. Brinkley, 480 A.2d 980, 986 (1984)). A motion for mistrial is a matter addressed to the discretion of the court. Commw. v. Gardner, 416 A.2d 1007, 1009 (1980).

> The Third Circuit "review[s] the denial of a motion for a mistrial based on a witness's allegedly prejudicial comments for an abuse of discretion. United States v. Xavier, 2 F.3d 1281, 1285 (3d Cir. 1993). In reviewing the denial of [a] motion [for a mistrial] on that standard, three factors guide our analysis: (1) whether [the] remarks were pronounced and persistent, creating a

> likelihood they would mislead and prejudice the jury;
> (2) the strength of the other evidence; and (3) curative
> action taken by the district court."

U.S. v. Lore, 430 F.3d 190, 207 (3d Cir. 2005).

Here, Superior Court examined Maneval's testimony at length in affirming the trial court's decision to deny the motion for a mistrial. Maneval explained that she remembered the pants worn by the man who entered the bank on the day in question, whom she later identified as Petitioner Mosley, because "[t]hey just looked like pants that someone wore in jail. They were with a stripe down the side, and I made a comment to that, that I thought they looked like some jailbird pants, is what I said." (Doc. 17-3 at 21). Maneval further testified that the pants reminded her of clothing she'd seen on television or in a film, while clarifying that she intended to describe the clothing and not describe Petitioner Mosley in a negative way. (Id.) In summary, Maneval uttered one prejudicial remark before the jury. While that remark may have been "pronounced," it was not persistent. The prosecution presented other strong identification evidence at trial, and the trial court took curative action. Thus, Petitioner Mosley has failed to satisfy any of the three Xavier prongs for mistrial motion review.

Based upon our *de novo* review of the R&R, we find nothing to suggest that the Superior Court's decision is contrary an unreasonable application of

clearly established federal law.  <u>Lore</u>, 430 F.3d at 207.  Thus, the petition will

be denied on the merits with regard to claim five (5).

**Claim 6**

Next, Petitioner Mosley claims that the trial court erred in denying his

pre-trial motion to suppress police testimony regarding inculpatory statements

that he made without a clear and explicit waiver of his Miranda rights.

Petitioner Mosley made incriminating while in police custody after being

advised of his rights. The statements were introduced at trial.

After having been advised of his rights, Petitioner Mosley argues that he

"was sufficiently hesitant about saying anything [] so much so that he

refrained from answering – at all – the direct question [posed by the police]:

'do you wish to make a statement?'"  <u>Id.</u>  Yet Petitioner Mosley concedes that

he made a statement to the police after having been advised of his rights,[8] (<u>Id.</u>

at 10), and *then* made a statement to police.  Mosley, however, asserts that

he exercised his right to counsel when the police asked him to write out his

_____

[8]Petitioner Mosley stresses that he exercised his right to counsel when
police requested that he write out his oral statement arguing that his
statement.  (Doc. 17-3 at 10).

oral statement[9] which was introduced at trial. The trial court ruled that Petitioner Mosley did not expressly ask for an attorney before giving his statement, and found that statement to have been expressed voluntarily. (Doc. 17-3 at 5).

The Superior Court noted that an accused person who invokes his right to counsel "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." (Doc. 17-3 at 10) (citing Edwards v. Arizona, 451 U.S. 477, 484-85 (1981)). Here, Petitioner Mosley did exactly that – he initiated further communication, exchanges, or conversations with the police after being advised of his rights. His constitutional rights were not violated because the statements introduced were made before he asked for a lawyer. Petitioner Mosley's request for counsel protected him from "further interrogation by the authorities." Edwards, 451 U.S. at Id. The prosecution had no duty to show that Petitioner Mosley had both initiated the exchange and "knowingly and intelligently

---

[9]Apparently Petitioner Mosley made an oral statement to police after being advised of his rights, and then, also after being advised of his rights he made an incriminating written statement that was used at trial. (Doc. 17-3 at 9-10).

waived his right to counsel." See Commw. v. Edwards, 902 A.2d 1139, 1150 (Pa. 2006).

Finally, the Superior Court noted that no evidence before the trial court contradicted police testimony regarding these events or their timing. "Thus, the record reflects that [Petitioner Mosley] made these statements voluntarily and while freshly armed with the knowledge of his constitutional rights." (Doc. 17-3 at 11). We agree with the Superior Court that Petitioner Mosley's suppression argument fails.

Nothing in the record suggests that Superior Court's adjudication on the merits resulted in a decision that was based on an unreasonable determination of the facts. Nothing suggests that Superior Court's adjudication on the merits was contrary to federal law or an unreasonable application thereof. Thus, the petition will be denied on the merits regarding claim six (6).

**(B) Habeas claims not raised on direct appeal to the Pennsylvania Superior Court**

### Ineffective assistance of PCRA[10] counsel (Claims 7-14)

Petitioner Mosley filed his petition for habeas corpus pursuant to 28 U.S.C. § 2254.  His claims 7-14 are based upon ineffective assistance of counsel during his PCRA proceedings in state court.  We agree with the magistrate judge that "freestanding claims of ineffective assistance of PCRA counsel are not cognizable in federal habeas proceedings."  (Doc. 31 at 9) (citing section 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.")).

Section 2254(i) is borne out by voluminous federal case law.  "There is no constitutional right to an attorney in state post-conviction proceedings . . ." Coleman v. Thompson, 501 U.S. 722, 725 (1991) (citing Pennsylvania v. Finley, 481 U.S. 551 (1987)); Murray v. Giarratano, 492 U.S. 1 (1989) (applying the rule to capital cases in which indigent death row inmates seek state postconviction relief). Consequently, a petitioner cannot claim

---

[10]Pennsylvania's Post Conviction Relief Act, 42 PA. CONS. STAT. ANN. § 9545.

constitutionally ineffective assistance of counsel in such proceedings.  See Wainwright v. Torna, 455 U.S. 586 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance).  Thus, the petition will be denied with respect to all ineffective assistance of PCRA counsel claims Petitioner Mosley asserts in claims 7, 8, 9, 10, 11, 12, 13, and 14, because such clams are not cognizable on federal habeas review.

**(C) Ineffective assistance of trial and appellate counsel (Claims 7-14)**

In claims 7, 8, 9, 10, 11, 12, 13, and 14 (hereinafter "claims 7-14"), Petitioner Mosley claims that he was denied the effective assistance of counsel in trial proceedings and on direct appeal.  Generally, in order for this court to address the merits of a habeas petition, all of the claims contained in the petition must be exhausted.  28 U.S.C. § 2254(b).  "The exhaustion requirement is satisfied only if the petitioner can show that he fairly presented the federal claim at each level of the established state-court system for review."  Holloway v. Horn, 355 F.3d 707, 714 (3d Cir. 2004).  "Fair presentation of a claim means that the petitioner 'must present a federal claim's factual and legal substance to state courts in a manner that puts them on notice that a federal claim is being asserted.'"  Id.

In Pennsylvania, a federal claim may be exhausted by: (1) presenting it to the Superior Court of Pennsylvania, either on direct appeal from a state criminal conviction; or, (2) appealing a PCRA court's denial of post-conviction relief.  See Lambert v. Blackwell, 387 F.3d 210, 233 (3d Cir. 2004).

Here, Petitioner Mosley failed to present claims 7-14 either to the Superior Court on direct appeal or in his PCRA appeal, which causes his habeas petition to fail on exhaustion grounds.  If these claims were to be dismissed without prejudice on exhaustion grounds, and Petitioner Mosley returned to state court to exhaust his claims, his PCRA petition would be untimely and the matter would be dismissed by the state court pursuant to 42 PA. CONS. STAT. ANN. § 9545(b).  See Keller v. Larkins, 251 F. 3d 408, 415 (3d Cir. 2001).  Under this state statute, a PCRA petition must be filed "within one year of the date the judgment becomes final," subject to certain enumerated exceptions not applicable here.  See 42 PA. CONS. STAT. ANN. § 9545(b).  However, "[w]hen a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'"  McCandless v. Vaughn, 172 F.3d, 255,  260 (quoting 28

27

U.S.C. § 2254(b)(1)(B)(i)).  As a result, Petitioner Mosley's claims 7-14 are deemed exhausted.

Although Petitioner Mosley's claims are deemed exhausted, "this does not mean that a federal court may, without more, proceed to the merits. Claims that are deemed exhausted because of a state procedural bar are procedurally defaulted . . . ."  Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000).

Generally, a federal court will not review a claim that is procedurally defaulted, Johnson v. Folino, 705 F.3d 117, 127 (3d Cir. 2013), unless the petitioner can demonstrate (1) cause for the default and actual prejudice as a result thereof, and (2) that failure to review the claim will result in fundamental miscarriage of justice.  Coleman, 501 U.S. at 750; McCandless, 172 F.3d at 260.

To demonstrate "cause" for a procedural default, the petitioner must show that "some objective factor external to the [petitioner's] defense impeded [his] efforts to comply with the State's procedural rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986).  Actual prejudice exists if the Petitioner can demonstrate errors that occurred at trial worked to his actual and substantive disadvantage, infecting the Petitioner's "entire trial with error of constitutional

dimensions." United States v. Frady, 456 U.S. 152, 170 (1982).  Alternatively, to show that a fundamental miscarriage of justice will occur if the claims are not reviewed, a petitioner must present new evidence that he is actually innocent of the crime for which he has been convicted. Cristin v. Brennan, 281 F.3d 404, 412 (3d Cir. 2002) ("[A]ctual innocence means factual innocence, not mere legal insufficiency."); Schlup v. Delo, 513 U.S. 298, 327 (1995) ("[A] petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.").

The failure of a federal habeas petitioner's counsel to raise an ineffective assistance of trial counsel claim in an initial-review collateral proceeding can constitute "cause" if: (1) PCRA counsel's failure itself constituted ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 687 (1984); and (2) the underlying ineffective assistance of trial counsel claim is "a substantial one," meaning that "the claim has some merit." Martinez v. Ryan, 566 U.S. 1, 14 (2012).  "Under Strickland, courts are precluded from finding that counsel was ineffective unless they find both that counsel's performance fell below an objectively unreasonable standard, and

that the defendant was prejudiced by that performance." <u>Marshall v. Hendricks</u>, 307 F.3d 36, 85 (3d Cir. 2002).

Issues 7-14 raise several claims.  Each one raises the issue of ineffective assistance of counsel in state court PCRA proceedings.  Claims 7-14 raise a trial counsel ineffectiveness and appellate counsel ineffectiveness for failing to raise the following claims: speedy trial, expert witness, notice of three strikes enhancement, prior bad acts testimony, witness testifying under the influence of prescription medication, and insufficient evidence.  For the following reasons, we will adopt the Magistrate Judge's R&R because Petitioner Mosley's claims do not constitute cause to excuse procedural default.  We will discuss each issue in turn.

### Claim 7: Speedy Trial Claim

Mosley raises a Sixth Amendment claim of ineffective assistance of counsel alleging that his trial and appellate counsel failed to advance a claim that a post-indictment delay in commencement of his trial violated his Sixth Amendment right to a speedy trial.  On June 10, 2008, criminal proceedings commenced against Petitioner Mosley—whose  jury trial was held on April 16, 2009.  As a result, there was a total of 310 days between the date the criminal complaint was filed and the date of trial.

The Supreme Court has held that a criminal defendant's Sixth Amendment right to a speedy trial is evaluated by looking at the following four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay. See Barker v. Wingo, 407 U.S. 514, 523 (1972); see also Wells v. Petsock, 941 F.2d 253, 256 (3d Cir. 1991). The threshold "triggering mechanism" for vesting a constitutional speedy trial right, however, is evaluating whether the delay is "presumptively prejudicial." Id. at 530. Whether a delay is presumptively prejudicial depends on the "circumstances of the case," id., but the Supreme Court has acknowledged that delays approaching one year may be presumptively prejudicial. Doggett v. United States, 505 U.S. 647, 651-52 (1992).

In the R&R, the Magistrate Judge recommended that the delay at issue—ten months and six days between the filing of the criminal complaint and the empaneling of a jury—falls short of being "presumptively prejudicial." See United States v. Musick, 291 Fed. App'x 706, 720 (6th Cir. 2008) (delay of ten months not presumptively prejudicial); United States v. White Horse, 316 F.3d 769, 774 (8th Cir. 2003) (nine and one-half months). We agree. Because the record establishes that the period of time between the filing of a

criminal complaint against Mosley and the commencement of his jury trial was not presumptively prejudicial, Mosley's Sixth Amendment speedy trial claim is meritless. Claim 7 does not constitute cause to excuse procedural default. Martinez, 566 U.S. at 14. Accordingly, we will adopt the Magistrate Judge's recommendation to deny Petitioner Mosley's claim 7 as procedurally defaulted.

### Claims 8, 9, 10: Expert Witnesses

Claim 8 raises an ineffective assistance of counsel claim alleging that Petitioner Mosley's trial and appellate counsel failed to request a court appointed handwriting expert to challenge the authenticity of a robbery note purportedly written by Petitioner Mosley. Claim 9 raises an ineffective assistance of counsel claim alleging that Petitioner Mosley's trial and appellate counsel failed to request a court-appointed psychiatrist to examine why Petitioner Mosley might have worn the clothing he did at the time of the robberies. Claim 10 raises an ineffective assistance of counsel claim alleging that Petitioner Mosley' trial and appellate counsel failed to request a court-appointed DNA expert to perform an analysis of the boots and clothing Petitioner Mosley purportedly wore at the time of the robberies.

We will adopt the Magistrate Judge's Recommendation to deny Petitioner Mosley's claims as procedurally defaulted because he has proffered no expert evidence in support of any of these claims. "It is well settled that prejudice caused by ineffective assistance of counsel cannot be based on mere speculation about the possibility of finding an expert witness, nor can it be based on mere speculation about the possible testimony." Dobson v. United States, Civil Action No. 13-1711 (PGS), 2016 WL 4941994, at *4 (D.N.J. Sept. 15, 2016) (citing Duncan v. Morton, 256 F.3d 189, 201-02 (3d Cir. 2001)).

Without any evidence of prejudice, these underlying ineffective assistance claims are meritless. Because the underlying ineffective-assistance claims are insubstantial, PCRA counsel's failure to advance these claims in initial-review collateral proceedings does not constitute cause to excuse Petitioner Mosely's procedural default of these claims. See Martinez, 566 U.S. at 14. We will adopt the Magistrate Judge's recommendation denying Petitioner Mosley's claims 8, 9, and 10 as procedurally defaulted.

**Claim 11: Notice of "Three Strikes" Enhancement**

Claim 11 raises an ineffective assistance of counsel claim alleging that Petitioner Mosley's trial and appellate counsel failed to object to his being

33

sentenced under the state's "three strikes" law despite the Commonwealth's failure to provide formal pretrial notice that it intended to seek a sentence enhancement under that law.

Petitioner Mosley was previously convicted of two crimes of violence and was therefore subject to a mandatory minimum sentence of twenty-five years in prison under the Pennsylvania "three strikes" law, 42 PA. CONS. STAT. ANN. § 9714. Petitioner Mosley was sentenced under the "three strikes" law to serve twenty-five to fifty years in prison for one count of felony robbery, followed by a consecutive sentence of ten to twenty years in prison for one count of felony criminal attempt to commit robbery. (Doc. 17-1 at 8-9). In the R&R, the Magistrate Judge recommended that we deny the Petitioner's claim as meritless. We agree.

The Pennsylvania "three strikes" law provides:

> Where the person [convicted of a crime of violence] had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary.

42 PA. CONS. STAT. ANN § 9714 (a)(2).

Petitioner Mosley claims trial counsel was ineffective to object to the application of the three strikes law because the Commonwealth did not provide him the appropriate notice. However, the "three strikes" law further provides that:

> Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided <u>after conviction and before sentencing</u>.

<u>Id.</u> § 9714(d) (emphasis added).

Here, Mosley was sentenced on July 10, 2009. (Doc. 17-1 at 8-9; Doc. 19-1, at 10). The Commonwealth had filed a written notice of its intention to seek a mandatory sentence under § 9714 on May 28, 2009—six full weeks before Mosley's sentencing hearing. (Doc. 19-1 at 9; <u>see</u> <u>also</u> Doc. 17-20 at 4). Courts have found notice to be reasonable when given as late as two or three days prior to sentencing. <u>See</u> <u>Commonwealth v. Taylor</u>, 831 A.2d 661, 666-67 (Pa. Super. Ct. 2003). Taking the plain language of the statute and this precedent into consideration, Petitioner Mosley's underlying claim that trial counsel was ineffective for not objecting to the Commonwealth's failure to provide reasonable notice of its intent to utilize the "three strikes" law is

meritless.  We will adopt the Magistrate Judge's recommendation to deny Petitioner Mosley's claim 11.

### Claim 12: Prior Bad Acts Testimony

Claim 12 raises an ineffective assistance of counsel claim alleging that Petitioner Mosley's trial and appellate counsel failed to object to a co-defendant's prior bad act testimony regarding holding a gun to her head on an earlier occasion.  The Magistrate Judge recommended that we deny this claim as meritless.  We agree with this recommendation.

At trial, the prosecutor called Diane Harry, Mosley's former girlfriend and co-defendant, to testify about the robbery.  Harry testified as follows:

> Q.    Okay.  Do you know whether [Mosley] would have
>
> had access to a weapon?
>
> A.    I always got the impression that he did, yeah.
>
> . . . .
>
> [DEFENSE COUNSEL]: Objection; impression, if he's
>
> not going to follow that up with a foundation.
>
> . . . .

[PROSECUTOR]: I'll follow up.

BY [PROSECUTOR]:

Q.    Why were you under that impression?

A.    Well, on occasion–at my house, like, prior to my

daughter's birth, before when we were dating, he had

me up against the wall with–I didn't actually see it, but

it was a gun.

Q.    Well, how do you know it was a gun if you didn't

see it?

A.    Well, because he had it to my head.

Q.  So it felt like a gun?

A.    Well, he said it was.

Q.    But on June 6, you didn't actually see a gun or any type of

weapon; is that correct?

A.    No.

(Doc. 17-12, at 14-15).

After reviewing this testimony, the Magistrate Judge concluded that it was admissible pursuant to PA. R. EVID. 404(b) to show that Mosley had access to a gun. See Commonwealth v. Towles, 106 A.3d 591, 603-04 (Pa. 2014). The magistrate judge also concluded that this evidence is admissible under the *res gestae* exception, which allows evidence of other acts to be admitted to tell "the complete story." Id. at 603 (quoting Commonwealth v. Williams, 896 A.2d 523, 539 (2006)).

The underlying ineffective assistance claim is meritless. The lawyer's failure to advance this claim in initial review collateral proceedings does not constitute cause to excuse Petitioner Mosley's procedural default. See Martinez, 566 U.S. at 14. We will adopt the Magistrate Judge's decision to deny as procedurally defaulted Petitioner Mosley's claim.

### Claim 13: Testimony While Under Medication

Claim 13 raises an ineffective assistance of counsel claim alleging that Petitioner Mosley's trial and appellate counsel failed to seek to exclude testimony by Mosley's co-defendant on the ground that she was under the influence of prescription medication. During her testimony, the court asked

38

the co-defendant whether she was under the influence of any drugs, medication, or alcohol.  (Doc. 17-12 at 2-3).  The plaintiff answered that she was on a nerve medication called Xanax and indicated that it would not interfere with her ability to understand what was going on.  See Garry v. Warren, Civil No. 13-3907 (ES), 2017 WL 1197758, at *16 (D.N.J. Mar. 31, 2017); cf. United States v. Meehan, 2016 WL 4901128, at *21 (E.D. Pa. Sept. 14, 2016) (noting the presentation of expert medical testimony about the effects of narcotics abuse on the ability of a witness to perceive and recall events accurately).

Beyond this exchange at trial, Petitioner Mosely has proffered no evidence whatsoever to suggest that this prescription medication had any effect on the witness's ability to perceive and recollect the events to which she testified.  United States v. Meehan, 2016 WL 4901128, at *21 (E.D. Pa. Sept. 14, 2016) (noting the presentation of expert medical testimony about the effects of narcotics abuse on the ability of a witness to perceive and recall events accurately).  In the absence of any evidence that the witness's testimony was adversely affected by her prescription medication, taken as prescribed, Petitioner Moslely's underlying claim that trial counsel was ineffective for failing to object to Harry's testimony is meritless.  We will adopt

the Magistrate Judge's recommendation to deny as procedurally defaulted Petitioner Mosley's claim 13.

### Claim 14: Insufficient Evidence

Claim 14 raises an ineffective assistance of counsel claim alleging that Petitioner Mosley's trial and appellate counsel failed to raise an insufficient evidence claim with respect to attempted bank robbery charges, characterizing the evidence adduced at trial as nothing more than "assumption and mere conjecture." There is overwhelming circumstantial evidence sufficient for a reasonable factfinder to conclude that Petitioner Mosley committed or attempted to commit the robbery at issue. The Superior Court summarized the facts underlying Mosley's convictions:

> [Mosley's] convictions arose from two incidents that occurred on June 6, 2008. [Mosley] first attempted to enter the Juniata Valley Bank, but bank employees denied him access after they became suspicious of his intentions. Shortly afterwards, [Mosley] entered the Rosewood market, a convenience store, and handed the cashier a note which demanded all the money located in the cash register and indicated that [Mosley] was carrying a handgun. [Mosley] left with a sum of money exceeding $400.00. After being questioned by police on June 9, 2008, Diane Harry, [Mosley's] girlfriend, identified [Mosley] as the perpetrator and admitted that she had driven the vehicle in which [Mosley] escaped.

(Doc. 17-3 at 2-3).

At trial Harry testified that she drove Mosley to the bank and watched him walk to the entrance and return without opening the doors. When Mosley returned to the car, Harry testified that he told her they would not let him in because he had no identification. She testified that she then drove him to Rosewood Market, where Mosley went in and returned to the car after a short period of time. She testified that she and Petitioner Mosley then drove to a gas station, where she went to the restroom and returned to the car to find Mosley wearing different clothing. She described the clothing he wore both before and after this change, as well as his conduct before, during, and after. She also described the car she drove during the day of the robbery.

The Commonwealth presented testimony of two bank tellers who testified that they saw a suspicious man approaching on foot causing them to lock the bank doors. The bank tellers described Mosley's clothing and behavior. They testified that they had asked him, through a glass door, to show his ID; but, the man said that he had left it in the car. The tellers not only described the car in which the man had left, but they also identified the

suspicious man as Petitioner Mosley.  These testimonies were consistent with Harry's testimony.

The Commonwealth subsequently presented testimony from the owner of the Rosewood Market and one of her employees.  Both of these witnesses testified about the robbery, describing the man who robbed the store, his clothing, and his conduct.  The owner and employee later identified Petitioner Mosley as the robber.  Their testimony was consistent with Harry's testimony.

The Commonwealth presented testimony of a customer of Rosewood Market who was eating lunch in his car in the store's parking lot during the time of the robbery.  He described the man who robbed the store.  He also described the car in which the man left, testimony that was consistent with that of Harry.

The Commonwealth also presented testimony of a customer of a gas station where Harry and Mosley went after the robbery that took place at the Rosewood Market.  She described a man she saw changing clothes in and beside his car at the gas pump, the clothing he had changed into, as well as the female driver of the car.  This testimony was consistent with that of Harry.

The Commonwealth presented the testimony of a state trooper who searched Harry's vehicle and residence. He testified about physical evidence found in the vehicle and residence that was submitted into evidence.

Finally, the state trooper–who interviewed Petitioner Mosley upon his arrest–testified about certain inculpatory statements made by Mosley during the interview. The main issue with respect to this claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 334 (1979). As the Supreme Court has observed:

> [I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.

Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam).

Based on the record before us, it is clear that Petitioner Mosley was convicted on the basis of overwhelming circumstantial evidence, sufficient for a reasonable factfinder to conclude that he committed or attempted to commit the robbery at issue. Petitioner Mosley's counsel had a reasonable basis for

not challenging the sufficiency of the evidence, and consequently, Mosley's underlying claim that trial and appellate counsel were ineffective for failing to raise and preserve an insufficient evidence claim is meritless.  See Jacobs v. Folino, 2011 WL 1770899, at *8-*9, *12 (E.D. Pa. May 9, 2011).  Because the underlying ineffective-assistance claims are insubstantial, PCRA counsel's failure to advance these claims in initial-review collateral proceedings does not constitute cause to excuse Mosely's procedural default of these claims. See Martinez, 566 U.S. at 14.  We will adopt the Magistrate Judge's recommendation to deny Petitioner Mosley's claim 14 as procedurally defaulted.

**Conclusion**

For the foregoing reasons we will adopt the Magistrate Judge's R&R denying Petitioner Mosley's petition for a writ of habeas corpus.  Additionally, because Petitioner  Mosley failed to make a showing that he was denied a constitutional right, we will decline to issue Petitioner's certificate of appealability.  An appropriate order follows.

**BY THE COURT:**


**Date: February 14, 2019**          **s/ James M. Munley**
                                      **JUDGE JAMES M. MUNLEY**
                                      **United States District Court**